**Dijon GRISSETTE, Plaintiff–Appellant,**

v.

**Kenneth RAMSEY, et al., Defendants–Appellees.**

No. 02–2881.

United States Court of Appeals,
Seventh Circuit.

Submitted Oct. 20, 2003.*

Decided Oct. 23, 2003.

---

* The Kane County State's Attorney's Office advised this court that the appellees were not served with process in the district court and have chosen not to participate in this appeal. After examining the appellant's brief and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the brief and the record. *See* Fed. R.App. P. 34(a)(2).

**68**

Dijon R. Grissette, pro se, Joliet, IL, for Plaintiff–Appellant.

Before BAUER, EASTERBROOK, and DIANE P. WOOD, Circuit Judges.

## ORDER

In July 2001, Dijon Grissette was in the Kane County Jail awaiting trial in Illinois state court for what he calls "numerous drug and weapons violations" when he wrote a letter to his wife, Gloria. "I might still be calling you to court," he told her, "so go over this list of stuff and have it on your brain just in case." The details that followed concerned the raid at which Grissette was arrested in April 2000 and were evidently designed to lay a foundation for his own version of the events. He "reminded" Gloria that he never actually lived at the raided apartment, that the $9,753 found in the closet belonged to her, and that the powder in the grey container was really a vitamin supplement she had bought at GNC. He emphasized to her that, although the police claimed to have found several guns in the living room, she had in fact specifically placed the three guns–which were hers, not his–in a locked case in the bedroom closet on the morning of the raid, only to find the case busted open on the living room floor when she returned home that evening.

Jail officials seized the letter after screening, so it was never delivered. Grissette was not told about the seizure (contrary to jail regulations), but first learned of it in September, when he was informed that the Kane County State's Attorney planned to introduce the letter into evidence at his criminal trial and add an additional charge of intimidating a witness.

This led Grissette to file a pro se lawsuit under 42 U.S.C. § 1983 against the jail officials, alleging that they interfered with his trial strategy by intercepting his letter and not telling him. The complaint also names various police officers as defendants, making allegations against them based on Grissette's version of the raid. He alleges, for instance, that the police busted open the gun case to make it appear that the guns were out in the open; filled out a false affidavit to get a second search warrant (in August 2000) to go back and get the mangled gun case; and confiscated and knowingly miscategorized property found at the April raid.

The district court dismissed the complaint, noting that Grissette's letter to his wife was nonprivileged, so the jail's handling of the letter did not give rise to a constitutional claim. The court also concluded that Grissette does not allege a lack of probable cause for the search warrants, and so interpreted his claims against the police as calling only for the return of property, which, given the existence of an adequate remedy in the Illinois Court of Claims, does not support a claim under § 1983.

■■■ The district court was correct about the letter–a jail is allowed to screen and intercept non-privileged mail that contains threats or seeks to facilitate criminal activity. *See United States v. Whalen*, 940 F.2d 1027, 1034–35 (7th Cir.1991). And even if the failure to notify Grissette violated jail regulations, that does not amount to a constitutional violation. *See Rowe v. DeBruyn*, 17 F.3d 1047, 1051 (7th Cir. 1994). The court was also correct that Grissette's demand for the return of property does not state a due-process claim, because an adequate remedy is available in the Illinois Court of Claims. *See Stewart*

*v. McGinnis*, 5 F.3d 1031, 1035–36 (7th Cir.1993).

We are less certain that Grissette failed to allege lack of probable cause. His complaint insists that the police obtained at least one of their warrants by lying in an affidavit. This, if established, would support a claim under § 1983 for violation of the Fourth Amendment. *See Franks v. Delaware*, 438 U.S. 154, 171–72, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978); *Molina ex rel. Molina v. Cooper*, 325 F.3d 963, 968 (7th Cir.2003).

██ But Grissette's claim faces two further obstacles. First, actions under § 1983 are subject to a two-year statute of limitations in Illinois. *See Manley v. City of Chicago*, 236 F.3d 392, 395 (7th Cir. 2001). The district court received Grissette's complaint on June 17, 2002–more than two years after the April 2000 raid. To be sure, the "mailbox rule" of *Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988), provides that a pro se complaint filed by a prisoner is deemed filed when it is given to prison officials for delivery. But Grissette's own brief states that his action "was filed on June 17, 2002," and does not identify any earlier date of mailing. It therefore appears that any Fourth Amendment claim arising from the April 2000 raid is time-barred.

██ In any event, it is doubtful, given his allegations, that Grissette could maintain such a claim. His complaint insists that he did not live at the raided apartment, and that it was leased not to him but to his wife. But he fails to explain how, in that case, he had a reasonable privacy interest in the apartment. *See Terry v. Martin*, 120 F.3d 661, 663 (7th Cir.1997). Because he may not raise a search-and-seizure claim on behalf of another, *see Young v. Murphy*, 90 F.3d 1225, 1236 (7th Cir.1996), his denial that he lived in the apartment defeats his Fourth Amendment claim at the outset.

AFFIRMED.